**In re Edward D. RAMSEY, and Kathi L. Ramsey d/b/a Ramsey Painting and Pressure Cleaning, and d/b/a Sunday Café, Debtors.**

No. 9:01–bk–02939–ALP.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

May 4, 2006.

Edward R. Miller, Naples, FL, for Debtors.

## ORDER ON ORDER TO
## SHOW CAUSE

(Doc. No.118)

ALEXANDER L. PASKAY,
Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case of Edward D. Ramsey and Kathi L. Ramsey (the Debtors) is an Order to Show Cause directed to the Lee County Tax Collector, (Tax Collector) (Doc. No. 118) which ordered the Tax Collector to appear before the undersigned to show cause, if it has any, why it should not be held in contempt for its alleged willful violations of the discharge injunction entered in the case of the Debtors. The relevant facts leading up to the Debtors' Motion for Rule to Show Cause are as follows.

Prior to filing their voluntary Petition for Relief the Debtors' owned and operated Sundae Café located at Morse Shores Plaza, 4901 Palm Beach Boulevard, Fort Myers, Florida. The Debtors became delinquent in their tangible property taxes for the years 2000, 2001 and 2002. In order to collect the past due property taxes, the Lee County Tax Collector (the Tax Collector) levied on the Debtors' bank accounts after the Debtors received their discharge in bankruptcy. Due to the actions of the Tax Collector, the Debtors filed their Motion for Rule to Show Cause. In their Motion, the Debtors allege that the Tax Collector was in violation of the discharge injunction pursuant to 11 U.S.C. § 524 when it levied on the Debtors' bank accounts. The Debtors contend that the monies levied by the Tax Collector were

not assets of the Debtors at the time of the filing of their bankruptcy.

On October 25, 2005, the Tax Collector filed its Response to Debtors' Motion for Rule to Show Cause (Doc. No. 122) contending that the Debtors have concealed or disposed of the encumbered assets, preventing the Tax Collector from foreclosing its lien on the assets involved. Furthermore, the Tax Collector contends that Florida Statute § 197.122 (2004) grants the Tax Collector a lien on all property upon which a tax is assessed or levied against personal property of the Debtor, in the event the assets encumbered by the lien cannot be found. Therefore, it is the Tax Collector's contention the Debtors acted in contempt of the Circuit Court for deliberately concealing or destroying the encumbered assets and for disregarding their obligation to the Tax Collector.

It appears from the record that on February 26, 2001, the Debtors filed their voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code. The Tax Collector on October 5, 2001, and on July 8, 2002, conducted a field visit and left Seizure Notice on both occasions at the Sundae Café. (Tax Collector's, Exhibits 15 and 19). On October 10, 2002, the Tax Collector posted Seizure Notice stating not to remove equipment and took inventory through the restaurant window. (Tax Collector's, Exhibit 23). On October 17, 2002, the Tax Collector, through its Legal Department, contacted the landlord of the Debtors to obtain access to the premises in order to inventory the equipment. (Tax Collector's, Exhibit 24). On November 22, 2002, the Tax Collector conducted a field visit and determined that the equipment was removed from the restaurant and on the same day visited the Debtors' place of residence. (Tax Collector's, Exhibit 27). The Tax Collector did find the removed equipment on the carport at the Debtors'

home. *Id.* It is the Tax Collector's contention that he requested the ability to take pictures of the equipment and nonetheless, he was denied the privilege by the Debtors' son. *Id.* On December 23, 2002, the Debtors converted their Chapter 13 case to a Chapter 7 case.

On December 26, 2002, the Tax Collector wrote to the SunTrust Bank, in which the Tax Collector informed the Bank, that according to the copies enclosed of Section 197.413(8)and (9) of the Florida Statutes, this was a procedure against the tax payer. According to the Tax Collector as stated in its letter, the Bank is authorized to remit to the Tax Collector sufficient funds from the account of the Debtors to satisfy the ratified warrant in the amount of $972.16. (Tax Collector's, Exhibit 29). On January 9, 2003, the Tax Collector contacted SunTrust Bank and stopped the levy and any further collection efforts due to receiving notification of the Debtors' Bankruptcy. (Tax Collector's, Exhibit 30).

On January 31, 2003, the Debtors filed their Schedule of Unpaid Debts. Among the debts scheduled the Debtors listed a debt owed to the Tax Collector the sum of $1,604.00. (Debtor's, Exhibit 4). The claim was scheduled by the Debtors as a secured claim. On February 23, 2003, the Tax Collector filed its Proof of Claim for Ad Valorem Taxes due on the Debtors' tangible personal property for the years 2000, 2001 and 2002. (Tax Collector's, Exhibit 32). The Proof of Claim listed a secured claim in the principle amount of $1,400.23, consisting of the tax due plus advertising, interest and fees in the amount of $548.76 for 2000, $433.12 for 2001 and $656.49 for 2002. *Id.* The Discharge of the Debtors was entered by this Court on May 8, 2003. (Tax Collector's, Exhibit 34). On December 30, 2003, the Trustee filed an Amended Objection to Claim No. 26 of Lee County Tax Collector.

(Doc. No. 93). On February 24, 2004, this Court entered its Order Sustaining Trustee's Objection to Claim No. 26 allowing the claim as secured, but disallowed for purposes of distribution. (Doc. No. 95).

On February 26, 2004, the Tax Collector reopened the Debtors' tax file and proceeded to levy on the Debtors' bank account. (Tax Collector's, Exhibit 1). On July 28, 2004, the Tax Collector spoke with the Debtor concerning payment of the debt owed to the Tax Collector. *Id.* It is the Tax Collector's contention that the Debtor indicated "they would be sending us some information." *Id.* On August 2, 2004, the Tax Collector created a warrant file. *Id.* On February 1, 2005, The Tax Collector mailed a Notice of Action to the Debtors notifying them that a Petition for Validation of Tax Warrants was issued for the unpaid 2002 Tangible Personal Property Taxes in the amount of $878.18. (Tax Collector's, Exhibit 42). On March 11, 2005, the Warrant issued by the Tax Collector was ratified by the Circuit Court. (Tax Collector's, Exhibit 43). On numerous occasions following the issuance of the Warrant, an Enforcement Specialist of the Tax Collector's Office drove by the Debtors' residence and posted a Seizure Notice. On one occasion the Enforcement Officer determined the assets were no longer in the County, in violation of the Tax Collector's lien rights and statutory obligation. *Id.* On August 22, 2005, the Tax Collector levied on the Debtors' bank accounts located at SunTrust Bank in order to satisfy the amount of $2,191.81 due on the Tax Warrant. (Tax Collector's, Exhibit 48).

On August 29, 2005, SunTrust informed the Debtors of the levy imposed on their checking accounts by the Lee County Tax Collector. (Debtors, Exhibit 11). In addition, SunTrust also advised the Debtors that "[d]uring this time, checks presented to SunTrust for payment against funds withheld from your account(s) will be returned unpaid." *Id.* On the same day, the Debtors' accounts were debited the amounts of $1,580.25 and $100.00, respectively. (Debtors, Exhibit 12). Due to the levy imposed by the Tax Collector the Debtors checking account became overdrawn. *Id.* On August 31 and September 1, 2005, the Debtors were charged insufficient funds penalty in the amount of $32.00 for each occasion. *Id*

Based on the foregoing, the Debtors assert that the Tax Collector willfully violated the discharge injunction pursuant to 11 U.S.C. § 524(a)(2) with its action of levying against the bank accounts of the Debtors. 11 U.S.C. § 524 provides in part:

(a) A discharge in a case under thus title:

(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the a debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived;

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and . . . (emphasis added).

11 U.S.C. 524(a).

 The liability of a tax payer for non-payment of real or tangible property taxes becomes a lien by operation of law on the property or properties located in the county which generated the tax in question. Taxes due and owing to the Tax Collector for property taxes do not create an *in personam* liability of the tax payer. The lien which attached to the properties prepetition applies solely to the properties on which the taxes are based and, therefore, the Tax Collector cannot proceed and

assert an *in rem* claim against properties acquired by the Debtors postpetition. *U.S. v. Sanabria*, 424 F.2d 1121, 1122–23 (7th Cir.1970) (affirming district court ruling limited federal tax liens attached at date of petition); *In re Olson*, 154 B.R. 276, 282 (Bankr.D.N.D.1993) (liens on dischargeable taxes "survive bankruptcy only as to the debtor's prepetition property."); *In re Leavell*, 124 B.R. 535, 540 (Bankr. S.D.Ill.1991) ("Tax liens securing dischargeable debts, however, do not attach to the debtor's postpetition after-acquired property."). In sum, this Court is satisfied that the Tax Collector has a valid and enforceable lien for the Debtors' 2000, 2001 and 2002 tangible property taxes against the properties in which the Debtors had an interest in prepetition. However, the Tax Collector does not have an enforceable lien against properties the Debtors acquired postpetition.

In this particular instance, the property in which the Tax Collector has an enforceable lien is the equipment which was used by the Debtors in operating the Sundae Café. This Court is not oblivious of the provision of Florida Statute § 197.122 which provides that:

> All taxes imposed pursuant to the State Constitution and laws of this state shall be a first lien, superior to all other liens, on any property against which the taxes have been assessed and shall continue in full force from January 1 of the year the taxes were levied until discharge by payment or until barred under chapter 95. All personal property tax liens, to the extent that the property to which the lien applies cannot be located in the county or to the extent that the sale of the property is insufficient to pay all delinquent taxes, interest, fees, and cost due, shall be liens against all other personal property of the taxpayer in the county

Fla. Stat. § 197.122(1) (2005).

This Court notes that this record is devoid of any evidence that the provision of this Statute is applicable in the present instance. This is so because the properties subject to the lien have been and continue to be located in the County. Therefore, nothing prevented the Tax Collector, who knew the location of the property involved, from affecting its levy and from seizing the property. Obviously, the Tax Collector decided that it was much easier to seize the Debtors' bank accounts and use the funds to satisfy the outstanding taxes rather than seizing the tangible equipments used by the Debtors in the operation of the Sundae Café.

■ Under Section 524(a)(2), a discharge in a bankruptcy case operates as an injunction against any act to collect any discharged debt as a personal liability of a debtor. As with the test for violation of the automatic stay, violation of the discharge injunction is "willful" if the creditor knew the discharge injunction was invoked and intended the actions which, in turn, violated the discharge injunction. *Hardy v. I.R.S.*, 97 F.3d 1384 (11th Cir.1996). The test for determining willfulness for violation of the discharge injunction is: (1) whether the Tax Collector was aware of the discharge injunction and (2) whether the Tax Collector intended the action which violated the permanent injunction. *Id.* at 1390.

■ The parties do not dispute that the Tax Collector became aware of the Debtors' bankruptcy only when the Debtors converted their case to a Chapter 7 on December 2, 2002. The parties further agree that the Tax Collector received notice of the Debtors Discharge on May 8, 2003. Nevertheless, once the Tax Collec-

tor determined they held a secured claim, they filed their request for tax warrant with Clerk of Circuit Court for Lee County, Florida (Circuit Court). Once the Tax Warrant was authorized by the Circuit Court, the Tax Collector posted the Seizure Notice and also levied on the Debtors' bank accounts. It is clear and this Court holds that the action of the Tax Collector was a willful violation of the discharge injunction since the Tax Collector knew the Discharge had been entered and its intentional actions clearly violated the discharge injunction and, therefore, the Tax Collector is in civil contempt of a valid injunction order of this Court. While courts are not in agreement that the violation of the discharge injunction creates a private cause of action *Walls v. Wells Fargo Bank N.A.*, 276 F.3d 502 (9th Cir.2002), the appropriate remedy of the courts contempt power falls under 11 U.S.C. § 105(a). *In re Skinner*, 917 F.2d 444 (10th Cir.1990). *See also, Matter of Terrebonne Fuel Lube Inc.*, 108 F.3d 609 (5th Cir.1997).

Based on the foregoing, this Court finds that the Tax Collector willfully and knowingly violated the discharge injunction and, therefore, the Court finds the Tax Collector to be in civil contempt. This Court is satisfied that 11 U.S.C. § 105(a) grants the Court independent statutory powers to award the Debtors any "necessary or appropriate" monetary relief for violation of the discharge injunction. *Hardy* at 1390. *See also, In re Lowthorp*, 332 B.R. 656 (Bankr.M.D.Fla.2005). Therefore, this Court is satisfied that the Tax Collector shall return to the Debtors the levied funds. In addition the Tax Collector should reimburse the Debtors for any cost (i.e., deposition costs) associated with defending their position as to the levied funds.

The Debtors in addition of seeking to recover the funds seized by the Tax collector, and the cost incurred in connection with this litigation, also seeks the reimbursement of attorney fees requested by the firm of Miller and Hollander (the Firm) in the amount of $21,000, for professional services rendered to the Debtors. According to the schedules submitted by the Firm, Mr. Hollander spent sixty (60) hours performing services for the Debtors at the hourly rate of $350.00 per hour. It appears from the schedules submitted the Firm indicates three court appearances, one of which lasted approximately one hour, the second three-quarters of an hour, and the last hearing held on March 22, 2006, lasting six hours. However, this Court takes judicial notice that this Court never had a hearing regarding this case which lasted six hours. As a matter of fact, the calendar indicates the hearing held on March 22, 2006, lasted approximately two hours and forty-five minutes. While the legal issues involved were not routine, the maximum hours reasonable to be spent on researching the issues involved could not have been more than three (3) hours. The balance of the charges incurred by the Debtors involved reviewing records and files which should not have been more than three (3) hours. In any event, the fees charged should have been charged at the paralegal rate and not the rate of the attorney. Therefore, this Court finds that considering the foregoing and the amount of controversy involved the amount sought by the Firm is unreasonable and shall not be more than $7,888.50.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Tax Collector shall return to the Debtors $1,680.15, the amount levied from the Debtors' SunTrust Ac-

counts, within thirty (30) days from the entry of this Order. It is further

ORDERED, ADJUDGED AND DE-CREED that the Tax Collector in order to purge itself of civil contempt shall reimburse the Debtors the amount of $64.00, the amount of insufficient funds penalty as a result of the funds having been levied, within thirty (30) days from the entry of this Order. It is further

ORDERED, ADJUDGED AND DE-CREED that the Tax Collector shall reimburse the Debtors for their expenditures relating to deposition costs and copies in the amount of $295.65, within thirty (30) days from the entry of this Order Therefore, this Court finds that the Tax Collector willfully and knowingly violated the discharge injunction and, therefore, the Court finds the Tax Collector to be in civil contempt. It is further

ORDERED, ADJUDGED AND DE-CREED that the Tax Collector shall reimburse the Debtors the amount of $7,888.50 for legal fees associated with defending this cause of action within thirty (30) days from the entry of this Order.